## Brown *v.* Union Bank.

L., a member of the firm of S. P. & Co., pledged to B. 300 shares of Union Bank stock. *Pickersgill* obtained judgement against S. P. & Co., and seized and sold the stock. B. bought it by his agent. The agent refused to comply with the terms of adjudication, and gave his written consent to let the Sheriff resell. S. G. & Co. purchased it at the second sale; but, as the bank refused to transfer the stock, the Sheriff returned the writ, "nothing realized." After the sale, B. filed his third opposition in the suit of *Pickersgill* v. S. P. & Co., claiming the proceeds under his act of pledge. He obtained judgment, which was appealed and affirmed. S. G. & Co. tendered the price of their bid to the Sheriff, and demanded the transfer.

B. sued the bank for the dividends, and to have the stock transferred to him. The bank called S. G & Co. in warranty.

*Held:* 1st. That the letter of B.'s agent consenting to the resale of the stock was a waiver by him of all objections to the sale, and the adjudication to S. G. & Co. was legal.

2d. The stock being so adjudicated, could not be divested from S. G. & Co. without a neglect or refusal to comply with the terms of the sale. The fact that they held the money in their hands while the opposition was pending, could not be construed into such refusal. It was not their fault that the bank refused to transfer the stock to them, and the Sheriff's return of the writ did not affect their title; the *mere act of adjudication* invested the purchasers with title—and the writ having performed its office, its return was a matter of course.

APPEAL from the Third District Court, of New Orleans, *Kennedy,* J. *L. Pierce* and *Benjamin & Micou,* for plaintiffs and appellants. *R. H. Denis,* for defendants.

MERRICK. C. J. *James Brown,* the plaintiff, being a creditor (to a very large

amount) of *Peter Lapice*, among other things, to secure himself took a pledge of three hundred shares of the stock of the Union Bank. *Pickersgill & Co.* having obtained judgment against *Sylvian Peyroux et al.*; *Lapice*, being one of the firm, issued an execution on the same, and on the fifth day of March, 1850, seized upon the stock as the property of *Lapice.*

The bank stock on the 22d day of March, 1850, was adjudicated to *Levi Pierce, Esq.*, per account of *James Brown*, for thirteen dollars per share, but, he refusing to comply, it was, with the written consent of *Levi Pierce*, dated 27th day of March, 1850, as attorney for *James Brown*, re-offered for sale.

On the 23d day of March, four days previous to *Mr. Pierce's* letter, *James Brown* filed his third opposition to the Sheriff sale, and claimed the proceeds of sale under his act of pledge.

Shortly after the filing of the third opposition, viz: on the sixth day of April, 1850, the stock "was adjudicated to *James Sager*, for account of the firm of *Sager, Gardner & Co.*, at the price and sum of twelve dollars per share, making the sum of three thousand six hundred dollars."

To this part of the return, the Sheriff appends on the return of the writ on the 15th day of November, 1851, the following, which "amount (the price) the purchaser never paid: *Mr. Frey*, the cashier of the Union Bank, having positively refused to permit me to transfer the said shares on the books of the bank to the purchaser, I therefore say nothing was realized by the adjudication made on the 6th day of April, 1851." (1850).

The opposition of *James Brown*, in the case of *Pickersgill & Co.* v. *Sylvain Peyroux & Co.*, was decided in June, 1851, and judgment signed on the 8th day of November of that year, maintaining his opposition and decree'ng that "the Sheriff pay over to the opponent the nett proceeds of the three hundred shares of the Union Bank stock *sold under* execution herein, after the payment of the costs."

*Pickersgill & Co.* appealed to the Supreme Court, and the judgment of the lower court was affirmed with costs.

On the third day of July, 1852, *James Sager*, through the agency of a Notary Public, tendered the amount of his bid to the new Sheriff, and demanded that he should make out a certificate of the adjudication in their favor, which the Sheriff declined to do, as he knew nothing personally of the affair.

It appears that *Gardner, Sager & Co.* were the agents of *Pickersgill & Co.*

On the 9th day of July, 1852, *P. M. Lapice* directed the Union Bank to pay to *James Brown* the dividends upon the stock, and to transfer the stock upon the books of the bank to him, as pledgee and purchaser of the stock, and at the same time notifying the bank that the adjudication to *Gardner, Sager & Co*, on the 6th of April, 1851, (1850,) had become null by the abandonment of the purchase and the return of the writ.

The suit is against the bank to compel the payment of the dividends and the transfer of the stock. *Gardner, Sager & Co.* were cited by the bank in warranty. Judgment was rendered in their favor, and *Brown* has appealed.

The court is of the opinion:

1st. That the letter of *Levi Pierce, Esq.*, as the attorney of *James Brown*, the pledgee of the stock, wherein he expressly authorized the Sheriff to proceed to the re-sale of the stock under the execution, was a waiver of all objections to the sale, if any existed, and the adjudication of the stock to *Gardner, Sager & Co.* was legal.

2d. That the stock being so legally adjudicated to *Gardner, Sager & Co.*, their interest could not be divested without a neglect or refusal to comply with the terms of sale on their part; that the holding the money in their own hands, they being the agents of *Pickersgill & Co.*, during the pendency of the opposition, without objection of any of the parties, cannot be construed into a refusal to comply with the sale; that the refusal of *Frey*, the cashier of the Union Bank, to transfer the stock on the books of the bank was not a fault attributable to *Gardner, Sager & Co.*, and that the Sheriff's return of the writ was without influence on their rights, because the *mere act of adjudication* by the Sheriff had invested the purchasers with title; and the writ, to the extent of the seizure made under it, had performed its office by the sale, and its return afterwards was a matter of course. *Perkins* v. *Dickson*, 4 Rob., 413.

Judgment affirmed.